# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DUCHONNA H. BRIGGS,

      Plaintiff,        :        Case Nos. 3:05-cv-129 & 130

    -vs-                                      Chief Magistrate Judge Michael R. Merz

                                              :

UNITED STATES AIR FORCE, et al.,

      Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case is before the Court on Defendants' Motion for Summary Judgment, filed and served December 7, 2007 (Doc. No. 40). The time for responding to the Motion under S. D. Ohio Civ. R. 7.2 expired on December 31, 2007, and no response has been filed. The Motion is accordingly ripe for decision.

The parties have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c) and the case has been referred on that basis.

### Procedural History

This case was filed April 8, 2005 (Doc. No. 1). Case No. 129 was filed by Plaintiff *pro se* and Case No. 130 was filed by attorney Charles McKinney on Plaintiff's behalf. On June 20, 2005, Plaintiff filed a *pro se* Motion to Consolidate and Amend (Doc. No. 6).

In the same Motion, Plaintiff advised the Court that Case No. 129 was the only authorized

1

case. The Court accordingly now formally orders Case No. 3:05-cv-130 dismissed without prejudice as filed without authorization by the Plaintiff.[1] While Case No. 130 has not been litigated, it has technically remained open and is now ordered closed.

The Court conducted a preliminary pretrial conference on November 15, 2005 (See Scheduling Order, Doc. No. 7). At that time Plaintiff had not retained counsel but was being advised by the Reverend Jerome McCorry of the Southern Christian Leadership Conference; Reverend McCorry participated in the conference to assist Plaintiff. Plaintiff indicated she might retain counsel and was ordered to advise the Court promptly if that occurred. The Court set a discovery cut-off date, which was agreed to by Plaintiff, of October 20, 2006, allowing approximately eleven months for discovery. *Id*. at ¶ 7.

On September 14, 2006, still proceeding *pro se*, Plaintiff moved the Court to extend for ninety days her time to respond to requests for admission, production of documents, and interrogatories (Doc. No. 14), complaining that she had been ill; Defendant's counsel had waited until August, 2006, to make these requests; the requests were not appropriately organized, and Reverend McCorry had left the SCLC. The Court relieved Plaintiff altogether from responding to the requests for admission and extended her time for responding to the other discovery requests to October 1, 2006 (Doc. No. 15).

On September 25, 2006, Defendant's counsel set Plaintiff's deposition for October 19, 2006 (Doc. No. 16). On October 10, 2006, the Court received a letter from Plaintiff asking to be excused

---

[1] Cases consolidated under Fed. R. Civ. P. 42(a) retain their separate identity. *Patton v. Aeroject Ordnance Co*., 765 F.2d 604 (6th Cir. 1985); 9 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D §2382. "[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Ry. Co*., 289 U.S. 479, 53 S. Ct. 721, 77 L. Ed. 1331 (1933).

from the deposition for an undisclosed "medical problem." (Doc. No. 17[2]) The Court denied the request because the excuse given was completely conclusory, both from Plaintiff and her physician (Doc. No. 18). The Court offered to have the deposition conducted in open court to allay any concerns about Plaintiff's having to appear alone. Plaintiff filed a formal Objection to the deposition which the Court overruled on the same basis (Doc. Nos. 19, 20).

On October 16, 2006, having obtained more information from Plaintiff's physician, the Court *sua sponte* reconsidered and re-set the discovery deadline for November 30, 2006, because the doctor had indicated thirty days would be enough treatment time (Doc. No. 21).

On December 5, 2006, after the time for discovery had expired, attorney Michael Murphy entered his appearance as counsel for Plaintiff and obtained from Government counsel an agreement to vacate the trial date and reopen discovery (Doc. Nos. 24, 25, and 26). On May 14, 2007, a new scheduling conference was held with Mr. Murphy participating on Plaintiff's behalf. New dates for completing the litigation were set in accordance with the revised Fed. R. Civ. P. 26(f) Report which the parties had filed. That Amended Scheduling Order (Doc. No. 31) set a discovery cut-off date of October 19, 2007, and a summary judgment deadline of December 7, 2007. Thus Plaintiff was given a whole additional year for discovery, just as requested by her new counsel.

Despite having an attorney and having agreed to the schedule, Plaintiff again balked at having her deposition taken and Defendant had to file a Motion to Compel to obtain the deposition (Doc. No. 33). Her counsel moved to extend the time yet again (Doc. No. 34). No medical excuse was offered and she had obtained counsel; the only stated reason was that she was "not prepared." At the same time, Mr. Murphy moved to withdraw as counsel (Doc. No. 36). The Court denied any extension and ordered Plaintiff to appear for deposition, warning her that failure to do so would

---

[2]The Court caused the letter to be filed and docketed so as to avoid considering an *ex parte* communication from Plaintiff.

3

result in dismissal (Doc. No. 37).

Plaintiff was represented at the deposition by attorney John Ebersole who formally entered his appearance in the case on November 9, 2007 (Doc. No. 38). The instant summary judgment motion was then timely filed on December 7, 2007. On December 28, 2007, attorney John Scaccia moved to substitute himself as trial attorney with Mr. Ebersole's consent (Doc. Nos. 43, 44).

On Saturday, December 29, 2007, two days before a response to the summary judgment motion was due, Mr. Scaccia filed Plaintiff's First [sic] Motion for Extension of Time (Doc. No. 45). The Court denied the Motion because it failed to comply with S. D. Ohio Civ. R. 7.3, expecting that Mr. Scaccia would quickly correct that deficiency and re-file. Because he has not done so as of the date of this Order, it is necessary to consider the Motion for Extension in greater detail.

The bulk of the Motion and accompanying Affidavit of the Plaintiff are spent accusing attorney Michael Murphy of legal malpractice for not pursuing the case. Of course, the Court has only Plaintiff's side of that story. Mr. Murphy has a good reputation as an attorney and served this community with distinction as a juvenile judge and this Court is unwilling to infer that he failed in his duty to Plaintiff merely on Plaintiff's say-so, given what happened in the case before Mr. Murphy entered and what has happened since he left.

Whether or not Mr. Murphy did what Plaintiff thinks he should have done, the fact remains that the case was pending for twenty months before Mr. Murphy entered his appearance. Plaintiff's decision to proceed without an attorney before that time was of her own making. She had assistance from attorney Joanne Ervin before filing and attorney Charles McKinney actually prepared and filed a complaint on her behalf. She has never represented to this Court that she was financially unable to obtain counsel nor did she seek leave to proceed *in forma pauperis*.

After Mr. Murphy withdrew, Plaintiff obtained the services of attorney John Ebersole. It is now asserted that he was retained just to represent the Plaintiff at her deposition, but the Court was

4

never advised of that fact while Mr. Ebersole was trial attorney of record, nor does his entry of appearance indicate a limited purpose. In any event, Mr. Ebersole has now withdrawn and Mr. Scaccia has replaced him.

Mr. Scaccia accepted the retainer with at least constructive knowledge of the docket. It should have been apparent to any reasonably cautious attorney from the Court's decision denying Plaintiff's request to re-set her deposition from October, 2007, that the Court was at or near the end of its patience with Plaintiff's delay. Apparently oblivious to that indicator, Plaintiff's counsel asked in the Motion for Extension of Time for "at least an additional 30 days to respond to the defendant's motion for summary judgment." (Doc. No. 45 at 2.) But then counsel avers that Plaintiff will need "at least limited discovery" prior to responding, without any indication of what discovery would be sought or any reason to believe it could be completed in thirty days. Counsel provides an extensive list of his trial obligations for the first quarter of 2008 which he says would preclude him "from adequate discovery and adequate preparation for a March 2008[3] trial on this matter." *Id*. at 4. But if counsel is in trial throughout the first quarter, when will he have time for any deposition discovery?

The record also shows that Plaintiff has failed in other ways to prepare this case for trial. For example, she filed a Witness List on May 15, 2007, in which she lists twenty-one names besides herself without identifying these witnesses by location or disclosing what they would testify to. In the same document, she lists two purported expert witnesses, but does not indicate what their testimony will be and has never furnished any reports from them.

At bottom, Plaintiff asks the Court to completely reschedule this case yet a third time because it has been neglected until now. For the first eighteen months the case was pending, the neglect was that of the Plaintiff who elected to proceed *pro se*. While she claims that her medical

---

[3]Trial to a jury is set for March 17, 2008.

5

condition prevented her from proceeding, the nature and severity of that condition has never been disclosed to the Court; in any event, if it is that severe, it should have prompted her to obtain counsel at the outset. For the past year that neglect is, Plaintiff asserts, attributable to her attorney. Clients continue to be responsible for their attorneys' neglect: "... the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable." (emphasis sic). *Pioneer Inv. Services v. Brunswick Associates*, 507 U.S. 380, 113 S. Ct. 1489, 1499, 123 L. Ed. 2d 74 (1993). The Court has been offered no plausible excuse for the neglect to this point in time and no plan at all for actually preparing this case for trial in the near future. For these additional reasons, the Motion for Extension of time is denied. The Court will proceed to decide the summary judgment motion on the basis of the materials already filed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court

>of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323;  *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted).  If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial.  *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990).  Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

**Analysis**

Plaintiff's Complaint avers that this case is brought "to remedy disparate treatment discrimination in employment and constructive discharge on the basis of race, gender, reprisal, and retaliation for engaging in protected activity, and unlawful prohibited employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, et seq., as amended." (Complaint, Doc. No. 1, ¶ 1.)  Plaintiff avers that she has exhausted available administrative

remedies. *Id*. at ¶ 4. Plaintiff then proceeds to state purportedly separate causes of action for gender discrimination (First Cause of Action), retaliation (Second Cause of Action), and reprisal (Third Cause of Action). Plaintiff took voluntary early retirement in February, 2003, and thus seeks compensatory damages and promotion to the Grade of GS-14 with an adjustment of her retirement annuity to reflect that promotion.

Defendant Secretary of the Air Force first notes that Plaintiff pleads several allegedly discriminatory acts which were never included in her EEO administrative complaints, including These consist of the allegation that Plaintiff was discriminated against on the basis of her gender (First Cause of Action), the allegation that, in 1999, General Bonjiovi took away the Plaintiff's duties and distributed them among three other employees (Complaint, ¶¶ 12, 22), the allegation that management constructively discharged the Plaintiff (Complaint, ¶ 14), the allegation that management officials engaged in reprisal from 1999 to 2003 (Complaint, ¶ 28), the allegation that, in 1999, General Bonjiovi transferred the Plaintiff after she filed a grievance (Complaint, ¶ 29), and all allegations alleging the Defendant failed to promote her due to her race except the two that were the subject of her administrative complaints. These two were the GS-1101-14 promotion in HQ AFMC/DRI, which took place on or around September 8, 2002, and the GS-1101-14 promotion in HQ AFMC/DRX, which took place on or around July 28, 2002.

Federal employees who alleged employment discrimination must exhaust their administrative remedies. *Dixon v. Ashcroft,* 392 F.3d 212, 217 (6th Cir. 2004). That requirement is jurisdictional. Its purpose is to trigger an investigation so that any discrimination can be remedied, without litigation if possible. A subsequent complaint in federal court is limited in scope to the claims of discrimination made in the administrative process and to any claims which would be reasonably expected to be investigated by the EEOC as a result of the administrative charges. *Weigel v. Baptist Hospital*, 302 F.3d 367 (6th Cir. 2002).

9

For the reasons detailed in Defendant's Memorandum (Doc. No. 40 at 13-15), Plaintiff has not exhausted her claims of gender discrimination and her claims with respect to reassignment of duties in 1999, denial of temporary promotions, and denial of reassignment to different positions. All such claims will be dismissed without prejudice for lack of subject matter jurisdiction.

In the Complaint, Plaintiff avers that she was subjected to "continuous and ongoing retaliatory acts from management officials" between 2001 and her retirement in 2003 (Complaint, ¶ 9). Defendant analyzes these claims as amounting to a hostile work environment claim.

To establish a hostile work environment claim, a plaintiff must prove four elements: (1) that plaintiff was a member of a protected class, (2) that plaintiff was subjected to harassment, (3) that the harassment was based on plaintiff's membership in the protected class, and (4) that the harassment created a hostile work environment. *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). To establish a hostile work environment, a plaintiff must prove "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams*, 187 F.3d at 560, *quoting Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The severe and pervasive requirement was reaffirmed in *Burlington Industries, Inc., v. Ellerth*, 118 S. Ct. 2257 (1998) and *Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998). To determine whether the alleged harassment is sufficiently severe or pervasive to create a hostile work environment, the court must consider the totality of the workplace circumstances. *Williams*, 187 F.3d at 561, citing *Harris*, 510 U.S. at 23, 114 S. Ct. 367; *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998). The test for a hostile work environment has both objective and subjective components: the conduct must be severe or pervasive enough that a reasonable person would find it hostile or abusive and the particular plaintiff must find it abusive. *Williams*, 187 F.3d at 566, *citing Harris*, 510 U.S. at 21-22.

Among the factors to be considered in determining whether an environment can be considered sufficiently severe as to justify a finding of a hostile work environment are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark v. UPS*, 400 F.3d 341, 351 (6th Cir. 2005).

At her deposition, Plaintiff was asked about each of the incidents which she alleges contributed to creating a hostile work environment. She complains of lower performance ratings in 2001 and 2002, but admits that she was rated "excellent" for those years and has submitted no evidence indicating she was entitled to a higher performance rating.

Plaintiff also complains of failures to reassign her in February, May, and September, 2001. With respect to the first request, the position was already filled at the time she requested the transfer. The second request was made because of a personality conflict between her and her then supervisor, Major Cynthia Foster. Ms. Briggs went on sick leave the day after the incident and by the time she came back, Major Foster had been transferred. Finally, her September, 2001, request to transfer was because of her desire for "career broadening." She was advised by a personnel specialist at Randolph Air Force Base, Texas, that this would be difficult to do at Wright-Patterson because it was such a competitive base.

Plaintiff complains that one of her supervisors, Mr. Mates, required her to submit a list of the work she had accomplished so that he could draft her performance appraisal. Plaintiff has failed to explain how this constituted harassment. The same thing is true of the voice mail message left for her by Mr. Mates on her home voice mail system advising her that her application for early retirement had been approved. She complains that Mr. Mates harassed her by making her complete a leave request for November 19, 2002, but his sworn testimony before the EEO investigator and the ample documentary evidence he submitted in support of that testimony shows that this was standard

practice, not harassment. She complains of Mr. Mates' failure to provide her with performance feedback in October, 2002, when she returned from four months' sick leave, but provides no refutation of his testimony that he was advised by a personnel specialist not to do so because she had worked only two months of the performance period; in any event, lack of a performance appraisal, without more, hardly constitutes harassment. Finally, she alleges that her computer was not hooked up when she returned to work in October, 2002, and was still in the box when she retired in February, 2003, but admits she never brought this to her supervisor's attention. Finally, she is unable to show that any of the promotions she did not get were denied her on the basis of an intent to harass her. None of her complaints of harassment includes anything which could be construed as racially hostile. Plaintiff's claims that Defendant subjected her to a hostile work environment are without merit.

Plaintiff also claims Defendant retaliated against her for engaging in protected activity. As noted by Defendant in his Memorandum (Doc. No. 40 at 23-24), Plaintiff has failed to point to any activity in which she engaged which was protected by Title VII.

Finally, Plaintiff has failed to establish a prima facie case that the two promotion opportunities for which she applied and which she did not get were denied to her on any discriminatory basis because she has failed to produce any evidence that the promotions were awarded to persons not in protected classes who were less qualified than she.

The Court concludes that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. The Clerk will enter judgment dismissing without prejudice Plaintiff's claims of gender discrimination and her claims with respect to reassignment of duties in 1999, denial of temporary promotions, and denial of reassignment to different positions for lack of subject matter jurisdiction. All others claims herein will be dismissed with prejudice.
January 7, 2008.

s/ **Michael R. Merz**<br>Chief United States Magistrate Judge